IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

NANCY J. HARVEY,

 Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

 Defendant.

No. C15-2058

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.  INTRODUCTION ............................. 2

II.  PRINCIPLES OF REVIEW ...................... 2

III.  FACTS .................................... 3
  A.  Harvey's Education and Employment Background .............. 3
  B.  Vocational Expert's Testimony from Administrative Hearing
    Held on December 2, 2013 ............................ 4
  C.  Harvey's Medical History ............................ 5

IV.  CONCLUSIONS OF LAW ........................ 9
  A.  ALJ's Disability Determination ...................... 9
  B.  Objections Raised By Claimant ...................... 12

V.  CONCLUSION ............................... 19

VI.  ORDER ................................... 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Nancy J. Harvey on July 14, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Harvey asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Harvey requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On September 28, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Harvey's Education and Employment Background

Harvey was born in 1962. She is a college graduate. In the past, she worked as a teacher's aide, hostess, telemarketer, and general clerk.

### B. *Vocational Expert's Testimony from Administrative Hearing Held on December 2, 2013*[2]

At the administrative hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is limited to:

> performing light work[.] . . . I want you to assume this worker can stoop, crouch, kneel, and crawl only occasionally, cannot climb ladders, ropes, or scaffolds. When it comes to reaching overhead, can do that only occasionally with both hands and arms I guess, can do it up to one-third of the time, but no more than that. I want you to assume this worker requires an occupation where she would not be exposed to hazards on the job and I'm thinking of work where she would be seriously injured if she were to fall or get dizzy or lose awareness of her surroundings, that sort of thing, can't work at unprotected heights, in other words can't work near dangerous, unguarded moving machinery, that sort of thing. And I want you to assume this worker is limited to performing only simple, routine, and repetitive work, work that doesn't require any close attention to detail or use of independent judgment on the job.

(Administrative Record at 68.) The vocational expert testified that under such limitations, Harvey would be unable to perform her past relevant work, but could perform the following light unskilled jobs: (1) furniture retail consultant, (2) usher, and (3) shipping-and-receiving weigher. The ALJ also inquired whether there would be jobs Harvey could perform if the hypothetical was changed from light work to sedentary work. The vocational expert testified Harvey could perform the following sedentary jobs: (1) call-out operator, (2) final assembler, and (3) surveillance system monitor.

---

[2] The hearing held on December 2, 2013, was the second administrative hearing in this matter. The first administrative hearing was held on May 10, 2012. On June 6, 2012, an ALJ denied Harvey's claim. Harvey appealed, and the Appeals Council on May 31, 2013, vacated the June 6, 2012 decision and remanded the case for further consideration and a new hearing.

4

## C. Harvey's Medical History

On January 25, 2010, Harvey met with Dr. Islam M. Tafish, M.D., complaining "I am slower than normal."[3] In discussing her presenting issues, Dr. Tafish noted:

> [Harvey] is a 47-year-old . . . female with history of medulloblastoma when she was 18 years old. It was resected at Mayo Clinic, and she had radiation therapy to the brain and spinal cord. . . . She complains that she is slower than usual, and she is unable to keep a job for a long time. She is worried that the radiation has caused her to be slow, and she is wondering if there is anything that can be done to save the remaining part of her intellect and stabilize her condition.

(Administrative Record at 559.) Harvey described her symptoms as being forgetful and slow. For example, she stated she often forgets instructions. She denied episodes of confusion or loss of consciousness, and denied problems with judgment, personality, or feelings of depression. Upon examination, Dr. Tafish opined:

> I think she is doing fine in terms of her mental condition, but she is probably physically slow because of coordination and motor planning problems that were part of her medulloblastoma surgery causing damage to that part of the brainstem and the cerebellum, and that is reflected in the slow coordination and motor performance.

(Administrative Record at 560.)

On December 9, 2010, Harvey was referred by a disability examiner to Daniel L. Ekstrom, PsyS, a licensed psychologist, for a psychological evaluation, including a memory assessment and mental status examination. Harvey reported difficulties with memory and work speed. Specifically, Ekstrom noted "[i]t is her belief that she has loss of memory and cognitive functioning which is demonstrated by frequently forgetting day to day activities such as appointments, conversations, diminished concentration, increased

---

[3] Administrative Record at 559.

5

distractibility, and lower levels of mental energy."[4] Ekstrom further noted Harvey had been terminated from 8 jobs "due to being 'slow and forgetful.'"[5] Additionally, Ekstrom noted that according to Harvey:

> her slowness alienates her from coworkers who often perceive that she is not doing her part. She has often received feedback that she has poor relationships with coworkers due to her demeanor which, at times, has been described as "rude. . . ." She denied difficulties with authority figures and reported that she readily accepts and adapts to feedback.

(Administrative Record at 598.) In discussing her employment history and work habits, Ekstrom found:

> Historically, she has been able to learn her job duties, but believes that she needs additional repetitions to master her responsibilities. Once she has learned her duties, she is able to execute her duties, but proceeds at a substantially slower pace. She denies problems with coworkers or supervisors, but has received some negative feedback in terms of her demeanor and her relationships.

(Administrative Record at 599.) Ekstrom administered a memory test to Harvey. Her test scores indicated "Ms. Harvey's memory capacities [] fall within the Average Range, but possibly somewhat lower compared to her premorbid functioning level."[6] Ekstrom diagnosed Harvey with adjustment disorder with mixed anxiety and depressed mood. Ekstrom concluded Harvey has a mild impairment in the ability to: remember and understand instructions, procedures, and locations, and interact appropriately with supervisors, coworkers, and the public. Ekstrom also found Harvey has mild to moderate impairment in the ability to: maintain attention, concentration, and pace.

---

[4] Administrative Record at 598.

[5] *Id.*

[6] Administrative Record at 601.

On December 17, 2010, Dr. Scott Shafer, Ph.D., reviewed Harvey's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Harvey. Dr. Shafer diagnosed adjustment disorder with mixed anxiety and depression. Dr. Shafer determined Harvey had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Shafer found Harvey was moderately limited in her ability to: maintain attention and concentration for extended periods. Dr. Shafer concluded Harvey "has some moderate limitations that would preclude tasks requiring sustained attention."[7]

On January 6, 2011, Harvey was referred by DDS to Stephen Kieszkowski, OTR/L, for a disability evaluation. Harvey's chief complaints included cognitive-motor impairments, manifested as forgetfulness and physical slowness completing assigned tasks, lower extremity weakness, and low, middle, and upper back pain. Harvey reported back pain ranging from 2/10 to 8/10, with average pain rated at 5/10. Her pain symptoms "are increased by prolonged standing, by driving over bumps and bending/stooping."[8] Testing revealed upper and lower extremity strength at 4/5. Her grip strength was normal. Her ability to squat was limited by leg weakness and balance difficulties. Finally, Ekstrom found Harvey could lift and carry 40 pounds. Ekstrom offered no opinion on Harvey's functional abilities.

On March 23, 2012, Harvey was referred to Dr. Joseph Barrash, Ph.D., for a neuropsychology consultation. On interview, Harvey reported "she has progressive

---

[7] *Id.* at 620.

[8] Administrative Record at 624.

memory deficits. She also reports difficulties controlling her emotions, which began after radiation therapy."[9] Upon examination, Dr. Barrash concluded:

> Ms. Harvey's cognitive functioning is within age-adjusted normal limits. Personality traits, particularly preoccupation with and counterproductive reactions to physical concerns, are the major factors interfering with her success in obtaining and maintaining gainful employment. Her insight and motivation to change illness-related behaviors appear to be poor.

(Administrative Record at 681.)

On September 9, 2013, Harvey met with Dr. Bahram Mokri, M.D., a neurologist at the Mayo Clinic, regarding her memory and slowness problems. Upon examination, Dr. Mokri found:

> Cranial nerves II through XII are unremarkable. Muscle stretch reflexes are normally active and symmetrical, and plantar responses are flexor. On general motor survey, her stance is slightly broad-based. She has a mildly positive Romberg and mild difficulty with tandem gait. Muscle strength is normal except for slight to mild weakness of the hip flexors and thigh abductors. Sensory examination is unremarkable.

(Administrative Record at 728.) Dr. Mokri diagnosed Harvey with memory decline and cognitive decline, suspect remote effect of radiation therapy, chronic neck pain, and chronic back pain. Dr. Mokri's primary recommendation was for Harvey to remain cognitively and physically active.

In a letter dated November 18, 2013, Dr. Mokri provided Harvey's attorney with a discussion of Harvey's "extensive evaluation and testing" with regard to cognitive abilities. Dr. Mokri concluded:

> Miss Harvey is unfortunately suffering from remote effect of radiation therapy manifested by abnormalities of brain function

---

[9] Id. at 681.

8

> as well as some osteopenia. Although aggressive craniospinal radiation therapy saved [Harvey's] life and she survived this potentially highly lethal brain tumor, the remote effect of the radiation therapy has caught up with her. Many patients who receive such treatments, because of the nature of their tumors, often do not survive long enough for the remote effect of radiation therapy to blossom.

(Administrative Record at 732.) Additionally, Dr. Mokri addressed Harvey's cognitive impairments as follows:

> [Harvey's] formal neuropsychometric testing showed moderate abnormality on her most demanding measure of delayed verbal memory. Miss Harvey's cervical spine x-rays showed marked spotty osteopenia which is likely related to her remote radiation therapy. In the lumbar region there were scattered degenerative changes. She has related neck pain and has dorsal pain and wedging of some of the dorsal spinal vertebra. It should be noted that the radiation was not only delivered to the brain and head but also to the entire spine. I was impressed by [Harvey's] slowness in performing mental tasks. Although, given enough time, she could come up with appropriate responses, it seemed that it took her a much longer time than usual to go through the mental processing.

(Administrative Record at 732.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Harvey was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1;

> (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland*

*v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Harvey had not engaged in substantial gainful activity since September 1, 2010. At the second step, the ALJ concluded from the medical evidence that Harvey has the following severe impairments: mood disorder, anxiety disorder, residuals of brain tumor with surgical resection, degenerative disc disease of the thoracic and cervical spine, and scoliosis. At the third step, the ALJ found Harvey did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Harvey's RFC as follows:

> [Harvey] has the residual functional capacity to perform "light" work . . . except she can only occasionally climb, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolds. She can occasionally reach overhead with both hands and arms. She cannot be exposed to hazards on the job such as unprotected heights or moving machinery. She is limited to simple, repetitive, and routine tasks. She cannot pay close attention to detail or use independent judgment on the job.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined Harvey is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Harvey could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Harvey was not disabled.

## B. Objections Raised By Claimant

Harvey argues the ALJ's RFC assessment is flawed. Specifically, Harvey argues the ALJ's RFC assessment is incomplete because it does not properly account for all of her impairments and functional limitations, in particular her difficulties with memory and slow pace. Harvey also argues the ALJ's RFC assessment is not supported by substantial evidence in the record. Specifically, Harvey asserts the ALJ failed to properly evaluate the medical opinion evidence in the record, which supports a finding of limitations in memory and pace. Harvey maintains that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing

is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Finally, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2008). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

The Court will first address the ALJ's consideration of the medical opinion evidence in the record. The ALJ thoroughly reviewed and addressed the opinions of Dr. Tafish, an examining doctor who evaluated Harvey in January 2010.[10] Specifically, the ALJ accorded Dr. Tafish's opinions "some weight" because:

> he found [Harvey] could function normally as long as she received enough training. However, Dr. Tafish also went on to state: "which could take longer tha[n] what might be

---

[10] *See* Administrative Record at 20 (providing thorough review of Dr. Tafish's opinions).

> expected for the average person." The undersigned has
> included a limit to simple work that is repetitive. The
> undersigned also notes that [Harvey] earned a bachelor's
> degree since her tumor surgery. The limitation to simple work
> is also supported by a neuropsychological evaluation at exhibit
> 27F, which was essentially normal. (Exhibit 8F)

(Administrative Record at 20-21). Next, the ALJ addressed the opinions of Daniel L. Ekstrom, PsyS, a licensed psychologist who performed a consultative examination in December 2010.[11] The ALJ noted Ekstrom found Harvey's memory to be in the "upper portion of the average range." The ALJ also noted Ekstrom found that:

> [Harvey] had adequate insight, impulse control and
> judgment. . . . She was assigned a Global Assessment of
> Functioning (GAF) scale score of 61-70. . . . A rating of 61-
> 70 indicates mild symptoms or mild difficulty in social,
> occupational, or school functioning. . . . Considerable weight
> is given to the opinion as it is based on clinical findings and is
> consistent with the medical record as a whole. (Exhibit 12F)

(Administrative Record at 21.) The ALJ also addressed the opinions of Stephen Kieszkowski, OTR/L, an occupational therapist who performed a consultative examination in January 2011.[12] The ALJ determined:

> Some weight is given to the opinions set forth in the
> examination. Specifically, the mild scoliosis, normal range of
> motion and 4/5 strength is consistent with the other evidence
> in the record and tends to show [Harvey] can at least do light
> work.
>
> However, the undersigned gives little weight to the specific
> limitation that [Harvey] cannot perform bilateral carrying
> which could cause a fall. This opinion is clearly based on the
> observation of [Harvey's] extreme behavior while walking,
> which was noted as "she staggers and deviates from her

---

[11] *Id.* at 21 (providing a thorough review of Ekstrom's opinions).

[12] *See* Administrative Record at 21.

> intended course." The undersigned finds that this extreme
> behavior is completely inconsistent with all the evidence in the
> record, including two neuropsychological evaluations and
> numerous medical records that do not support such extreme
> gait behaviors. Additionally, these extreme gait behaviors are
> inconsistent with [Harvey's] statements that she was able to go
> mushroom hunting and search for treasures while using a metal
> detector. (Exhibit 16F)

(Administrative Record at 21.) Next, the ALJ addressed the opinions of Dr. Joseph Barrash, Ph.D., a neuropsychologist who performed a neuropsychological examination in March 2012.[13] The ALJ discussed Dr. Barrash's opinions as follows:

> A neuropsychological evaluation was performed[.] . . .
> Results indicated [Harvey] had cognitive functioning which
> was well within age-adjusted normal limits. She had a
> preoccupation with and counterproductive reactions to physical
> concerns. It was noted that this preoccupation was the major
> factor interfering with her success to obtain and maintain
> gainful employments. Her insight and motivation to change
> illness-related behaviors was poor. [Harvey] was diagnosed
> with somatic preoccupation and [she] indicated that she was
> not interested in psychological therapy at this time.
> Considerable weight is given to the opinion that [Harvey] had
> "cognitive functioning within age-adjusted normal limits."
> (Exhibit 27F)

(Administrative Record at 22.) Finally, the ALJ thoroughly addressed the opinions of Dr. Mokri, a neurologist who evaluated Harvey in September 2013.[14] The ALJ granted:

> some weight to [the] neuropsychological evaluation. It is
> generally normal with some moderate limits, which are again

---

[13] *Id.* at 22.

[14] *See* Administrative Record at 22 (providing a thorough review of Dr. Mokri's opinions). Additionally, while the ALJ does not refer to the neurologists by name, his discussion of Dr. Mokri's opinions also includes consideration of the opinions of Dr. Mokri's colleagues, Drs. Trenerry and Drubach, who evaluated Harvey at the same time as Dr. Mokri.

15

>addressed in the residual functional capacity and allow for the simple work. Little weight is given to the conclusion that her pain may be "debilitating." Dr. [Mokri] only saw [Harvey] in that one setting and simply indicated that she rocked back and forth. The undersigned has included many limits in her functioning that are attributable to pain, such as limitations to light work with occasional postural and occasional reaching overhead. (Exhibit 33F, 34F, 35F).

(Administrative Record at 22.) Overall, the ALJ concluded:

> the objective findings in this case fail to provide strong support for the allegations of symptoms which produce limitations on [Harvey's] ability to perform basic work activities.

(Administrative Record at 20.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the medical opinion evidence in the record. The Court also finds that the ALJ provided "good reasons" for the weight he assigned the various medical opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Specifically, with regard to Harvey's assertion that the ALJ failed to adequately consider the medical evidence as to her limitations in memory and pace, the Court believes that the ALJ properly considered and accounted for her alleged limitations in these areas. The ALJ's RFC assessment addressed Harvey's memory and pace difficulties by limiting her to "simple, repetitive, and routine tasks" and finding she "cannot pay close attention to detail or use independent judgment on the job."[15] In *Brachtel v. Apfel*, a claimant was found to "often" have deficiencies of concentration, persistence, or pace. 132 F.3d 417, 421 (8th Cir. 1997). The ALJ's RFC assessment in *Brachtel*, provided that the claimant had the ability "'to do only simple routine repetitive work, which does not require close attention to detail.'" *Id.* (quotation omitted). Upon review, the Eighth Circuit Court of Appeals determined the limitations requiring the claimant to only do "'simple routine

---

[15] Administrative Record at 18.

16

repetitive work, which does not require close attention to detail[,]'" properly accounted for the claimant's deficiencies in concentration, persistence, and pace in the ALJ's RFC assessment. *Id.*; *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding the ability to do simple, repetitive, routine tasks adequately captures a claimant's deficiencies in concentration, persistence, or pace). Accordingly, in this case, the Court finds the ALJ's RFC determination that Harvey is able to do "simple, repetitive, and routine tasks" and should not be required to "pay close attention to detail or use independent judgment on the job" adequately accounts for Harvey's deficiencies in memory and pace.[16] *See Howard*, 255 F.3d at 582; *Brachtel*, 132 F.3d at 421. Therefore, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Harvey also contends that the ALJ's RFC assessment is "flawed in light of additional evidence submitted to the Appeals Council." A 2014 letter from Dr. Mokri was submitted as new and additional evidence to the Appeals Council, following the ALJ's decision. In her brief, the Commissioner correctly points out that "much of the information in the September 2014 letter merely repeats what Dr. Mokri said in a November 18, 2013, letter, which was in the record before the ALJ."[17] In addition to the 2014 letter providing no pertinent additional information, the Appeals Council concluded that the additional evidence "does not provide a basis for changing the [ALJ's]

---

[16] *Id.*

[17] Commissioner's Brief (docket number 14) at 14; *compare* Administrative Record at 732-33 (Dr. Mokri's November 2013 letter) with Administrative Record at 742-43 (Dr. Mokri's September 2014 letter).

17

decision."[18] Therefore, having reviewed the entire record, including the new and additional evidence submitted to the Appeals Council, the Court finds that the ALJ's weighing of Dr. Mokri's opinions is supported by substantial evidence on the record as a whole. *See Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."). Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

Turning to the ALJ's overall RFC assessment for Harvey, as discussed in detail above, the ALJ thoroughly addressed and considered Harvey's medical history and treatment for her complaints in determining her RFC.[19] The ALJ also properly considered and thoroughly discussed Harvey's subjective allegations of disability in making his overall disability determination, including determining Harvey's RFC.[20] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Harvey's medical records, observations of treating physicians, and Harvey's own description of her limitations in making the ALJ's RFC assessment for Harvey.[21] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical

---

[18] Administrative Record at 2.

[19] *See id.* at 20-23 (providing a thorough discussion of Harvey's overall medical history and treatment).

[20] *See* Administrative Record at 19-20 (providing a thorough discussion of Harvey's subjective allegations of disability).

[21] *Id.* at 19-23 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes Harvey's assertion that the ALJ's RFC assessment is flawed is without merit.

## V. CONCLUSION

The Court finds the ALJ properly considered and weighed the medical opinion evidence in the record. The Court also finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 12th day of February, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA